**EQUIPMENT & SYSTEMS FOR INDUSTRY, INC., Plaintiff,**

v.

**David ZEVETCHIN, John Baker and Big East Equipment Company, Inc., Defendants.**

**Civ. A. No. 94–40142–NMG.**

United States District Court, D. Massachusetts.

Oct. 12, 1994.

Mark S. Furman, Edward R. Wiest, Tarlow, Breed, Hart, Murphy & Rodgers, Boston, MA, for plaintiff.

Herbert L. Holtz, Christopher Weld, Jr., Todd & Weld, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

## I. BACKGROUND

The plaintiff, Equipment & Systems for Industry, Inc. ("ESI"), acts as a manufacturer's representative for manufacturers and distributors of heavy construction equipment. As a manufacturer's representative, ESI attempts to sell the products of the firms that it represents to local construction companies located throughout New England. The good will that ESI develops, with respect to both the manufacturers that it represents and the customers to whom it sells the equipment, is an important factor in its business.

ESI employed the defendants, David Zevetchin ("Zevetchin") and John Baker ("Baker"). Zevetchin was Director of Sales and Marketing and Baker was a salesman whose territory included Vermont, eastern New York and western New Hampshire. Both Zevetchin and Baker entered into employment contracts with ESI which contained non-competition covenants as follows:

In the event that the [employee] leaves or is terminated from

the employ of ESI, it is agreed that he will not represent those companies represented by ESI at any time during the six (6) months prior to termination and for a period of one (1) year after termination NOR work for any direct competitor who represents those companies represented by ESI at any time during the six (6) months prior to termination and for a period of one (1)

year after termination. Should the [employee] leave or be terminated from ESI's employ and go to work for a direct competitor or in his own business, the [employee] agrees not to solicit, pursue, or otherwise actively sell customers [sic] that he had active proposals or projects pending with (at any time during the three (3) months prior to termination) for a period of not less than 120 days after the termination.

Employment Contracts of David Zevetchin and John Baker, ¶ 7.

Some time in June, 1994, Zevetchin left ESI and went to work for Big East Equipment Co., Inc. ("Big East"), a competitor of ESI. Baker resigned from ESI on July 12, 1994, and he, too, went to work for Big East. Soon thereafter, ESI brought this action against Zevetchin, Baker and Big East to enforce the non-competition agreements executed by Zevetchin and Baker. ESI also moved for a preliminary injunction.

On September 23, 1994, this Court held a hearing on the plaintiff's motion for a preliminary injunction. At that time, the Court determined that Zevetchin and Baker had unilaterally breached their non-competition agreements with ESI. As a result thereof, the Court found that: 1) ESI had demonstrated a likelihood of success on the merits, 2) ESI would suffer irreparable harm if the preliminary injunction was not granted, 3) ESI's harm would outweigh any harm that the injunction would cause to the defendants, and 4) the public interest would not be adversely affected by granting the injunction. *See Camel Hair and Cashmere Inst. of Am. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir.1986). Accordingly, the Court entered a preliminary injunction against defendants Zevetchin and Baker. *See* Fed. R.Civ.P. 65; *Shipley Co., Inc. v. Clark*, 728 F.Supp. 818, 825–28 (D.Mass.1990). Because Big East was not a party to nor bound by the non-competition agreements between Zevetchin and Baker and ESI, and because ESI presented no compelling reason for enjoining Big East, it was not enjoined.

The injunction issued by the Court enforced the covenants not to compete found in the employees' contracts. The terms of the

agreements are somewhat ambiguous. Nonetheless, the Court interprets them. as prohibiting an employee who leaves ESI from representing, for a period of one year, any manufacturer that ESI had represented during the preceding six months. In addition, that employee is not permitted, for a period of 120 days, to sell to a customer with whom the employee had an active proposal of sale pending during the last three months of his employment at ESI.

In an effort to impose the least restrictive but suitable injunction, the Court ordered: 1) ESI to submit a list of specific manufacturers and customers to whom ESI believed the injunction should apply, 2) Zevetchin and Baker to submit objections, if any, to that list, and 3) both parties to submit their proposals for the amount of security to be posted as a condition of the injunction. *See* Fed.R.Civ.P. 65(c).

The parties have agreed to a majority of manufacturers and customers to whom the injunction is to apply, but defendant, Zevetchin, has objected to three of the fourteen proposed manufacturers and five of the twenty proposed customers. The parties have failed to reach agreement on the amount of security that should be posted by ESI.

## II. DISCUSSION

### A. *Manufacturers Subject to Preliminary Injunction*

The Court will include in the injunction those manufacturers who were proposed by ESI and not opposed by Zevetchin and Baker. (See the first 11 manufacturers listed in the attached Injunction.) Zevetchin argues that the injunction should not apply to three of the manufacturers proposed by ESI, namely, Canica, Fabtec and Harpscreen. The Court addresses those three manufacturers individually.

#### 1. *Canica*

■ Zevetchin argues that the injunction should not apply to Canica because ESI never represented Canica. In an affidavit, the Director of Dealer Development for Canica confirms that ESI never executed a contract with Canica and never represented Canica.

ESI contends that Canica would have been represented by it but for Zevetchin's interference with the execution of the contract and that therefore the injunction should apply to Canica.

The non-competition agreement applies only to "those companies *represented* by ESI at any time during the six (6) months prior to termination." Employment Contract, ¶ 7 (emphasis added). The plain language of the contract applies the non-competition covenant to those companies actually represented by ESI and not to those with whom ESI was simply in negotiations. Although ESI may have been so engaged with Canica, ESI never actually represented Canica. For that reason, the injunction shall not apply to Canica. If, as ESI claims, Zevetchin interfered with a potential contract, it can seek damages therefor at trial.

#### 2. *Harpscreen*

■ ESI acts as a manufacturer's representative for all replacement parts produced by Harpscreen and seeks to enjoin Zevetchin and Baker from acting as a representative of that company. Zevetchin objects on the grounds that one of the manufacturers that Big East represents, Masterskreen, uses Harpscreen parts to build its machinery, and customers would not buy Masterskreen products from Big East if they could not also obtain Harpscreen replacement parts through Big East. Zevetchin argues that applying the injunction to Harpscreen would bar Big East from selling Masterskreen products.

The Court finds Zevetchin's argument unpersuasive. Because ESI represented Harpscreen during the relevant time frame, the injunction shall apply to Harpscreen. If a Big East customer needs a replacement part from Harpscreen during the next year, that customer will simply have to deal with some other Harpscreen representative.

#### 3. *Fabtec*

■ Zevetchin claims that the injunction should not apply to Fabtec because he brought Fabtec to ESI. That argument is without merit. It was Zevetchin's responsi-

bility as an employee of ESI to attract new clients and manufacturers. Once those manufacturers engaged ESI, they became associates of ESI, not Zevetchin.

## B. Customers Subject to the Preliminary Injunction

The "customers" are those construction companies located throughout New England and New York State that buy construction equipment through ESI. The injunction will apply to those customers who were proposed by ESI and not opposed by Zevetchin and Baker. (See the first 15 customers listed in paragraph 2 of the attached Injunction.) Zevetchin and Baker argue that the injunction should not apply to five of the customers proposed by ESI. The Court addresses those customers individually.

### 1. Empire Paving

■ Empire Paving is owned and operated by the owner of Big East, a defendant and the current employer of Zevetchin and Baker. ESI does not object to Zevetchin and Baker working for Big East, but proposes that they be enjoined from selling any equipment to their employer's construction company. The Court finds that scheme to be illogical and unworkable. For that reason, and because ESI has presented no evidence or argument in support of its contention that the injunction should apply to Empire Paving, it shall not be so applied.

### 2. Casella

The non-competition agreement applies to "customers that [the employee] had active proposals or projects pending with." Employment Contract, ¶ 7. Zevetchin objects to including Casella within the injunction because, he argues, Casella declined to do business with ESI. The evidence shows that although ESI never sold any equipment to Casella, Baker had an active project or proposal pending with Casella. For that reason, the Court will enjoin Baker from soliciting Casella.

Zevetchin, on the other hand, did not have any proposals or projects pending with Casella and, therefore, will not be enjoined from soliciting Casella.

### 3. Becker Construction

■ Zevetchin concedes that he has conducted business with, and sold equipment to, Becker Construction ("Becker"). He argues, however, that the Court should not apply the injunction to Becker because he sold equipment to it before he was employed by ESI. That argument is unavailing. Accordingly, the injunction shall apply to Becker, but will be limited to the sale and rental of construction equipment, and not apply to the conduct of banking business between the defendants and Becker's president.

### 4. Jake Enterprises

Zevetchin again argues that a customer should be exempted from the non-competition agreement solely because he conducted business with that customer prior to his employment at ESI. Zevetchin's employment contract with ESI makes no such exception and the injunction will therefore apply to Jake Enterprises.

### 5. Cherenzia Construction

For the reasons stated with respect to Jake Enterprises, the injunction will apply to Cherenzia Construction.

## C. Amount of Security

Fed.R.Civ.P. 65(c) requires that the party applying for a preliminary injunction give security if the injunction is issued. The amount of security to be posted must be such as the Court deems proper for the payment of "costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c).

Because the Court has issued an injunction, ESI shall post security. See Fed.R.Civ.P. 65(c). ESI suggests that a nominal amount would be sufficient. Zevetchin, on the other hand, seeks security in excess of $800,000. The amount of security sought by Zevetchin is excessive in two key respects:

■ 1. Zevetchin lists the damages that *Big East* allegedly will suffer on account of the injunction. Big East, however, is not an

**258**

enjoined party. Rule 65(c) requires the party applying for an injunction to post security for the payment of damages that may be suffered by an *enjoined* party. *See* Fed. R.Civ.P. 65(c). Under that rule, therefore, ESI must post security to protect only Zevetchin and Baker, the enjoined parties, from possible damages. Big East's potential "losses" are irrelevant.

2. Zevetchin includes Canica and Casella in his accounting. As explained above, the Court does not make Canica subject to this injunction and applies the injunction to Casella only with respect to its business with Baker.

■ ESI's argument for nominal security is also unpersuasive. Zevetchin and Baker are enjoined from representing thirteen manufacturers, and they cannot sell to eighteen and nineteen customers, respectively. The injunction may cost Zevetchin and Baker commissions while it is in force and may curtail their future earnings by eroding their reputation and good will in the industry. They may suffer significant damages if they are wrongfully enjoined. Thus, nominal security is insufficient.

Taking all of the relevant factors into consideration, the Court will order ESI to post security in the amount of $50,000.

### ORDER

For the foregoing reasons, plaintiff's motion for entry of a preliminary injunction is **ALLOWED,** in part, and the Preliminary Injunction attached to and issued with this Order is hereby **ENTERED.**

SO ORDERED.

### PRELIMINARY INJUNCTION

1. Defendants, Zevetchin and Baker, are enjoined for one year, commencing September 23, 1994, from representing the following manufacturers:
    a. Cedarapids, Inc.
    b. Erie Strayer Co.
    c. Eagle Iron Works
    d. Extec of America
    e. Hauck Manufacturing
    f. WEM
    g. Peerless Conveyor
    h. Superior Conveyor
    i. ESCO
    j. Teledyne, Inc.
    k. Haajhem
    l. Harpscreen
    m. Fabtec

2. Defendants, Zevetchin and Baker, are enjoined for 120 days, commencing September 23, 1994, from soliciting sales from the following customers:
    a. Atlantic Industries
    b. Mashantucket Sand & Gravel
    c. Amrec
    d. WPC/Porcella
    e. Denis Corp.
    f. Dugas Trucking
    g. Maietta Construction
    h. Mid Maine Waste
    i. Pichette
    j. Lamontaigne
    k. Material Sand
    l. Harvey Construction
    m. Chittendon County
    n. Elnicki
    o. Spezzano Brothers
    p. Becker Construction
    q. Jake Enterprises
    r. Cherenzia Construction

3. Defendant Baker is enjoined for 120 days, commencing September 23, 1994, from soliciting sales from Casella Waste.

4. Pursuant to Fed.R.Civ.P. 65(c), ESI is required to post security in the amount of $50,000.

SO ORDERED.